# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CR-0017-CVE |
| | ) (13-CV-0349-CVE-PJC) |
| GARY WAYNE ADAMS, | ) |
| a/k/a Gary W. Adams, | ) |
| a/k/a Gary Wayne Redden, | ) |
| a/k/a Gary W. Redden, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is defendant Gary Wayne Adams' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 36). On March 20, 2014, the Court entered an opinion and order (Dkt. # 53) denying defendant's motion in part and setting an evidentiary hearing as to his ineffective assistance of counsel claim that his former attorney, Julia O'Connell, failed to comply with defendant's request to appeal his conviction and sentence to the Tenth Circuit Court of Appeals. The Court held an evidentiary hearing on July 7, 2014, and defendant was present for the evidentiary hearing and he was represented by counsel, Stephen Knorr.[1] Defendant testified in support of his motion, and the government called O'Connell as a witness.

---

[1] Knorr had previously filed a motion (Dkt. # 58) regarding his continued representation of defendant, and he suggested that defendant may have wanted Knorr to withdraw from his representation of defendant. At the evidentiary hearing, defendant stated on the record that he was satisfied with Knorr's services and that he wanted Knorr to represent him at the evidentiary hearing.

**I.**

On February 15, 2011, a grand jury returned an indictment charging defendant with possession of a firearm after prior felony conviction, and a conviction for this crime ordinarily carries a maximum punishment of 10 years imprisonment. Dkt. # 2. Defendant made his initial appearance on January 3, 2012, and O'Connell, the Federal Public Defender for the Northern District of Oklahoma, was appointed to represent defendant. Dkt. # 4. O'Connell briefly met with defendant before his initial appearance and, after reviewing the pretrial services report,[2] she preliminarily formed an opinion that defendant could be subject to sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Under the ACCA, if a defendant has three or more convictions for a violent felony or a serious drug offense, a defendant must be sentenced to at least 15 years imprisonment and the statutory maximum sentence is life imprisonment. However, the pretrial services report listed many of defendant's prior criminal cases as "disposition unknown," and O'Connell was unable to determine if defendant was actually convicted of certain criminal charges. O'Connell discussed her concerns with defendant, and she gave defendant a copy of the statute. She had limited time to meet with defendant before the initial appearance and this was a short discussion. After the initial appearance she began the process of searching for documentation about defendant's prior convictions. O'Connell had difficulties obtaining certain records from

---

[2]  The pretrial services report is prepared by the United States Probation Office, and it is provided to the magistrate judge before the initial appearance to aid the magistrate judge in determining whether defendant is a suitable candidate for pretrial release. The report is prepared on the morning of the initial appearance and the criminal history provided in the report is often incomplete, and on cross-examination O'Connell testified that she does not rely on the report as an accurate representation of a defendant's criminal history.

Colorado state courts, but she gathered enough documents to form an opinion that the ACCA would be applicable to defendant.

O'Connell met with defendant at least four times before the change of plea hearing, and the primary focus of her discussions with defendant was his possible sentence, rather than his guilt or innocence. Defendant had at least four prior convictions that were likely to be considered predicate offenses under the ACCA, and she had substantial documentation for at least three of those convictions.[3] She advised defendant that the ACCA would likely apply if he were convicted, but she told him that she was committed to do everything possible to find reasons why his prior convictions might not qualify as predicate offenses under the ACCA. Defendant repeatedly expressed concerns about the consideration of his prior burglary convictions as violent felonies under the ACCA, and O'Connell testified that defendant had difficulty with the concept of a violent felony under federal law. Defendant believed that the State of Colorado Department of Corrections considered his prior convictions to be nonviolent for housing purposes, and he could not understand how his burglary convictions could be considered violent felonies under federal law. O'Connell testified that defendant appeared to understand her explanation concerning the application of the ACCA, but he refused to accept that convictions deemed nonviolent under state law could be treated as violent felonies under the ACCA. She remembered one discussion prior to the change of plea hearing in which defendant expressed a desire to plead guilty and challenge his sentence on appeal, and she advised defendant against this plan. She suggested that the best way to preserve issues for

---

[3] Three of the predicate offenses were convictions for second degree burglary. Defendant was convicted of second degree burglary in Rogers County, Oklahoma, and on two different occasions he was convicted of second degree burglary in Fremont County, Colorado. Defendant was also convicted of conspiracy to commit second degree burglary in Adams County, Colorado.

appellate review was for defendant to go to trial and appeal from a conviction, because this could give rise to more issues to appeal and increase the chances for success on appeal. Defendant chose to change his plea to guilty without a jury trial. O'Connell advised defendant to change his plea without a plea agreement, because there were no advantages to him in a plea agreement and he would have to waive many of his rights, including certain appellate and post-conviction rights.

Before the change of plea hearing, defendant completed a petition to enter plea of guilty (Dkt. # 19) with the assistance of his attorney. In the petition, defendant acknowledged that he could be facing a mandatory minimum sentence of 15 years if the ACCA applied but, if the ACCA did not apply, his statutory maximum sentence would be 10 years. Dkt. # 19, at 3. The petition states that defendant "believe[d] that [his] attorney has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP SHE HAS GIVEN ME." Id. at 4. Defendant appeared for the change of plea hearing and he advised the Court that he intended to change his plea to guilty. O'Connell was not able to attend the change of plea hearing, and another attorney from O'Connell's office, Selim Fiagome, represented defendant at the hearing. The Court accepted defendant's guilty plea and a sentencing hearing was set for May 4, 2012. Dkt. # 17. Defendant did not enter a plea agreement with the government as part of his guilty plea.

After the change of plea hearing, O'Connell continued to seek documentation about defendant's prior convictions, and none of the documents she found was helpful in challenging the applicability of the ACCA. She met with defendant about three or four times between the change of plea and sentencing hearings.

A presentence investigation report (PSR) was prepared by the United States Probation Office, and the PSR noted that defendant had four prior convictions that qualified as violent felonies

under the ACCA. One of the four violent felonies was a 1993 conviction for second degree burglary in Fremont County, Colorado.[4] PSR, at 8. Based on a criminal history category of VI and a total offense level of 30, defendant's advisory sentencing guideline range was 180 to 210 months.[5] O'Connell delivered a copy of the PSR to defendant and allowed him to review it on his own before she met with him again. O'Connell met with defendant about three or four times between the change of plea and sentencing hearings to review the PSR with defendant and she explained to defendant that he had four predicate offenses under the ACCA. She continued to seek documents from the Colorado courts in the hope that she would discover information that could be used to show that his prior convictions were not violent felonies. None of the documents she received were of any assistance to defendant. Defendant continued to question why his Colorado burglary convictions were considered violent felonies under federal law, and O'Connell explained several times to defendant that a state classification of a crime as nonviolent did not provide a basis to object to a predicate offense under the ACCA. She did not recall that defendant specifically asked her to file objections to the PSR and she could not recall any statements by defendant implying that he thought objections should be filed. By the time of the sentencing hearing, O'Connell believed that defendant had accepted that he would be sentenced under the ACCA and that there was no legitimate basis to attack any of the predicate offenses.

---

[4] In his § 2255 motion, defendant argues that this conviction should not have been treated as a violent felony under the ACCA. Dkt. # 36, at 4. The Court has previously entered an opinion and order (Dkt. # 53) denying this claim.

[5] The actual guideline range for an offense level of 30 and a criminal history category of VI is 168 to 210 months. However, defendant was subject to sentencing under the ACCA and his statutory mandatory minimum sentence was 180 months, resulting in a guideline range of 180 to 210 months.

Defendant was sentenced on June 15, 2012 but O'Connell was not able to attend the sentencing hearing, and Stephen Greubel from the Federal Public Defender's office represented defendant at the sentencing hearing. Dkt. # 22. At the sentencing hearing, defendant was sentenced to the statutory mandatory minimum sentence of 180 months imprisonment, and the Court advised defendant that he had a right to appeal the sentence. Dkt. ## 22, 24. The court specifically told defendant that he had 14 days from the entry of the judgment and commitment to file a notice of appeal, but defendant testified at the evidentiary hearing that he believed he had one year to file an appeal. Before the sentencing hearing, O'Connell had advised defendant that it would be reasonable to appeal his sentence if he received a sentence greater than 180 months or a sentence above the guideline range, but she told defendant that these scenarios were not likely to arise. However, O'Connell did not feel that there any reasonable basis to appeal defendant's sentence on the ground that the ACCA did not apply to his case. On June 18, 2012, O'Connell met with defendant to discuss the advantages and disadvantages of filing an appeal, and defendant did not instruct her to file a notice of appeal.[6] Defendant testified that he did not ask her to file a notice of appeal, because he "figured it was already taken care of." He also does not recall that O'Connell discussed the possibility of filing an appeal. The meeting lasted about 20 minutes. O'Connell testified that it is her practice to advise her clients of their appellate rights after the sentencing hearing, and it is solely the client's decision as to whether an appeal should be filed. She further testified that she would file an appeal if directed to do so by a client even if she believed that the client had no valid issues to

---

[6] O'Connell testified that defendant signed a waiver of appeal form and the form is in her file, but the form is not signed and dated by O'Connell. However, neither party offered a copy of the form into evidence at the hearing, and defendant denies that he signed a form during his post-sentencing meeting with O'Connell. The Court does not have a copy of the waiver of appeal form, and this will not be a factor in the Court's decision.

raise on appeal, and if she had any doubt or ambiguity as to a client's decision to file an appeal she would follow up with the client. Defendant's deadline to file an appeal expired on July 2, 2014, and he did not file a notice of appeal by that date.

Defendant's pro se notice of appeal (Dkt. # 25) was filed on October 5, 2012. O'Connell recalls that her office received either a letter from defendant or a copy of the pro se notice of appeal, but she did speak to the appellate specialist in her office, Berry Derryberry, about defendant's case and her office did open an appellate file. She also believed that Derryberry entered an appearance on behalf of defendant in the appeal. The government moved to dismiss the appeal due to the untimeliness of the filing of the notice of appeal. Dkt. # 33. Defendant conceded that the appeal was untimely and the appeal was dismissed. Id.

Defendant did not file a timely notice of appeal and his conviction and sentence became final after his deadline to file an appeal expired on July 2, 2012. Defendant's § 2255 motion was filed on June 10, 2013, and the motion is timely under § 2255(f)(1). Defendant asserts that his 1993 second degree burglary conviction in Fremont County, Colorado should not have been treated as a violent felony under the ACCA, and he claims that his attorney provided ineffective assistance of counsel by failing to comply with his request to file a notice of appeal. Defendant requested an extension of time to file a brief in support of his § 2255 motion, and the Court granted defendant's request. However, defendant was advised that his deadline to file a brief asserting new claims was July 2, 2013, but that he could file a brief clarifying his existing claims no later than July 25, 2013. Dkt. # 35. On July 26, 2013, defendant filed a motion to amend his § 2255 motion to add a claim for relief based on the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013). The Court denied defendant's motion and found that his proposed claim would be meritless. Dkt.

7

# 39. The government has filed a response (Dkt. # 46) to defendant's § 2255 motion, and defendant has filed a reply (Dkt. # 51). The Court entered an opinion and order (Dkt. # 53) setting for evidentiary defendant's claim concerning defense counsel's alleged failure to comply with defendant's request to file a notice of appeal, but defendant's § 2255 motion was denied in all other respects. On July 7, 2014, the Court held an evidentiary hearing and heard the testimony of defendant and O'Connell.

## II.

Defendant asserts that he received ineffective assistance of counsel, because O'Connell did not file a notice of appeal after he specifically directed her to do so. The government responds that O'Connell met with defendant after his sentencing hearing and he did not instruct O'Connell to file a notice of appeal. Dkt. # 46.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second

prong, a defendant must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

The Supreme Court has clearly established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). While there is no bright-line rule requiring a defense attorney to ask the defendant if he wishes to appeal, an attorney has a duty under the Sixth Amendment to the United States Constitution to consult with his client about the possibility of an appeal if the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. This situation is an exception to the general rule that a defendant must show that his attorney's error had an adverse effect on the proceedings to prevail on a claim on ineffective assistance of counsel, because a defense attorney's failure to file an appeal results in the defendant's forfeiture of a judicial proceeding. Id. at 483. To prevail on an ineffective assistance of counsel claim, a criminal defendant is not required to show that the appeal would have had merit if he establishes that he made a timely request for his attorney to file a notice of appeal. Id. at 486. The Tenth Circuit has held that an attorney who disregards a defendant's request to file a notice of appeal is ineffective and this error is presumptively prejudicial. United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003). The remedy for an attorney's failure to file a notice of appeal as requested by a defendant is granting the defendant leave to file a delayed appeal. United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005).

9

The first issue the Court will consider is whether O'Connell consulted defendant after his sentencing hearing about the possibility of filing an appeal, because defendant testified that O'Connell met with him after the sentencing hearing and she did not ask him if he wanted to file an appeal. A defense attorney may provide ineffective assistance by failing to meet with her client about the possibility of appealing if the client has previously expressed an interest in filing an appeal. In Flores- Ortega, the Supreme Court held that an attorney's failure to consult with his client about an appeal may constitute ineffective assistance of counsel under some circumstances. Flores-Ortega, 528 U.S. at 478. Counsel has a "constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. A court must consider all information that counsel knew or should have known. Id. A key, although not determinative, factor is whether the defendant pled guilty or was convicted following a trial, because this may limit or expand the scope of issues that can be raised on appeal. Id. In this case, defendant testified that he met with O'Connell following his sentencing hearing but he does recall any discussion about the possibility of filing an appeal. However, defendant also testified that he did not raise the issue of an appeal during the meeting, because he "figured it was already taken care of." O'Connell testified that she explained to defendant the advantages and disadvantages of filing an appeal and that it was entirely defendant's decision as to whether he wished to appeal his sentence. She explained that it is her standard practice to meet with every client following a sentencing hearing to discuss the possibility of a direct appeal, and she followed her standard practice in this case. The Court finds that O'Connell's testimony on this issue is credible, and the

10

evidence shows that O'Connell did meet with defendant to discuss his intention to appeal his sentence. O'Connell showed a clear recollection that she had met with defendant and the substance of that meeting, and the Court finds that O'Connell did consult defendant about his decision to file an appeal.

The next issue concerning defendant's ineffective assistance of counsel claim is whether he expressly instructed O'Connell to file a notice of appeal. Defendant testified that he instructed O'Connell to "protest" the use of his prior convictions as predicate offenses, because he believed that his burglary convictions were classified as nonviolent under Colorado law. At one point, he testified that could not remember if he ever used the word "appeal" before the change of plea hearing when discussing this issue with O'Connell. However, he later testified that, before the change of plea hearing, he specifically said that "I definitely want to appeal my burglaries." O'Connell's testimony is generally consistent with defendant's testimony concerning his focus on the prior burglary convictions and she explained that defendant had a difficult time understanding that his prior convictions could be treated as violent felonies under federal law. It is clear from defendant's and O'Connell's testimony that this legal issue was discussed at almost every meeting before and after the change of plea hearing, and O'Connell was aware that defendant strongly believed that his prior burglary convictions were not predicate offenses under the ACCA. The possibility of an appeal was discussed early on in the case, and defendant suggested that he would change his plea to guilty and then appeal the applicability of the ACCA. O'Connell advised defendant against this course of action and suggested that he go to trial if he intended to appeal. She also advised that defendant change his plea without a plea agreement in order to preserve his appellate rights. After the change of plea hearing, O'Connell testified that she discussed with

11

defendant circumstances that could give rise to a viable issue on appeal. She advised defendant that it was unlikely that he could successfully challenge the applicability of the ACCA, but that he could have a viable appeal issue if he received a sentence greater than 180 months. Defendant was sentenced to 180 months imprisonment. After the sentencing hearing, O'Connell met with defendant and advised him that he had a right to appeal his sentence, and she explained the advantages and disadvantages of filing an appeal. Defendant testified that, during the meeting, he did not expressly instruct O'Connell to file an appeal, and O'Connell's recollection on this point is consistent with defendant's testimony.

There is no evidence that defendant expressly asked or directed O'Connell, during her meeting with defendant after the sentencing hearing, to file an appeal. The Court finds that O'Connell did not ignore an express instruction from defendant to file an appeal. However, defendant could be arguing that his prior discussions with O'Connell gave rise to an implied request for O'Connell to file an appeal and that a reasonable attorney should have understood that defendant wanted to appeal his sentence. According to defendant, he told O'Connell before the change of plea hearing that "I definitely want to appeal my burglaries," and defendant's repeated inquiries to O'Connell after the change of plea hearing about the treatment of his Colorado burglary convictions could have put O'Connell on notice that defendant would want to file an appeal of his sentence. O'Connell testified that she understood that defendant could have been asking about the possibility of an appeal during conversations before the sentencing hearing, and she advised defendant about the circumstances that could give rise to valid grounds for an appeal. She did not believe that defendant had a strong argument against the application of the ACCA, but she advised defendant that he could possibly successfully challenge a sentence in excess of 180 months. The Court finds

12

that O'Connell's testimony is credible and she was clearly aware that defendant's inquiries could indicate that he would want to file an appeal after the judgment and commitment was entered. The Court has already determined that O'Connell's testimony about the events after the sentencing hearing is credible, and the Court has found that O'Connell consulted with defendant about his intention to appeal his sentence and that she specifically asked him if he wanted to appeal. Defendant expressly told O'Connell that he did not wish to appeal his sentence, and she complied with his request by not filing a notice of appeal. Defendant's testimony suggests that he believed that he did not have to specifically direct O'Connell to file a notice of appeal because he "figured it was taken care of," but his testimony does not show that it would have been sufficiently clear to O'Connell from defendant's prior statements that she could have known that defendant wanted to file an appeal. Although O'Connell had mentioned that an appeal might be viable if certain events happened, defendant received the anticipated sentence of 180 months and none of the circumstances she mentioned that could support an appeal had occurred. There is no evidence that O'Connell could have inferred that defendant wanted to appeal under these circumstances absent a specific direction from defendant to file a notice of appeal. The Court finds that O'Connell acted reasonably by not filing a notice of appeal, and defendant's claim of ineffective assistance of counsel concerning O'Connell's failure to file a notice of appeal should be denied.

**IT IS THEREFORE ORDERED** that defendant Gary Wayne Adams' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 36) is **denied** as to defendant's remaining claim of ineffective assistance of counsel based on defense counsel's failure to file a notice of appeal. This disposes of all pending claims and defendant's § 2255 motion has been denied in its entirety. A separate judgment is entered herewith.

**DATED** this 11th day of July, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE